Morning Council, we are here for the second case of the morning. This is case number 20-2525 East Central Illinois Pipe Tra V. Prather Plumbing & Heating, In Mr. Wolters, I apologize, I'm going to interrupt very briefly. Mr. Reces, can you hear Mr. Wolters? I'm sorry, I can't hear. All right, Mr. Wolters, hang on one second. Mr. Reces, can you hear me? Yes. How about now? We can hear you. Can you hear us, Mr. Reces? Yes, yes, yes, and my deepest apologies. We're still a little bit new with the technology. Apology accepted. Thank you. Mr. Wolters, we are going to turn it back over to you. The case has been called, and we'll recognize you. You've got your full 15 minutes, Mr. Wolters. Thank you, Your Honor. As I said, the plaintiffs are employee benefit funds administered pursuant to the Employee Retirement Income Security Act. The defendant, Prather Plumbing & Heating, Inc., is a plumbing contractor that was incorporated in Illinois in May of 2012. And just as a housekeeping note, I would ask if it's acceptable to the court to use acronyms. There are two companies that I will discuss in this case. One is Prather Plumbing & Heating, Inc., and I would like to refer, for brevity's sake, to that as PPHI. As well as there's a second company called Prather Plumbing, Inc., and if acceptable, I would refer to that as PPI. No objection. That's fine. Okay. So in this case, the district court, both parties filed cross motions for summary judgment. The district court granted summary judgment to the defendant, PPHI. The crux of the case is whether the defendant is a successor under federal common law developed pursuant to ERISA. Plaintiffs sought successor liability for judgment entered against PPI in January of 2013 in the amount of $298,000. At that time, PPI was a union contractor and had been since 2004. Successor liability in the Seventh Circuit was initially adopted in 1990 in the case of Upholster's International Union Pension Fund v. Artistic Furniture. And in that case, the Seventh Circuit adopted a two-part analysis to imposing successor liability. Mr. Walters, I want to ask you a question before you get there. Can you talk about how we have subject matter jurisdiction over this case after Peacock? Yes. Peacock involved a bail-piercing theory of liability under state law, under Virginia state law. And the distinction here is successor liability in the Seventh Circuit is a federal common law action. So there, right there is the distinction. But even if you're correct, and I'm not sure that I agree that it was analyzed in the district court in Peacock under the state law as opposed to the federal common law, but even if you're correct that it was, isn't there a difference here between direct and vicarious liability? Bail-piercing is a direct liability theory, and Peacock, I think, pretty clearly holds that there has to be an independent basis for jurisdiction. And isn't there a distinction between whether the liability sought is vicarious or direct as to what that independent basis might be? Well, first off, in terms of direct liability, in elite directors, the Seventh Circuit determined that alter ego claims were a direct liability claim. And then subsequently, district court said that successor liability is also a direct liability claim. So to answer that question, is successor liability, I would contend, is a direct liability. But more importantly, I think the court has to look at it from the federal common law perspective. And under federal common law, the court has jurisdiction. It's pretty clear to me. But you're talking about it has subject matter jurisdiction under Peacock as an independent basis. So successor liability is an independent basis for subject matter jurisdiction after Peacock. No, I'm saying that Peacock is narrowly defined under its fact that it was a bail-piercing cause of action under state law. And as such, it could not be sustained because there was no supplemental jurisdiction for it. Mr. Walters, let me ask you the same question in a slightly different way. Let's assume that successor liability is a federal common law doctrine, as you've articulated. For purposes of federal question jurisdiction under Section 1331, you very well may satisfy the arising under question. Because the claim you bring arises under federal law, here federal common law. There's a separate and independent question, though, before you can come in under 1331. What law supplies the cause of action in federal court? The cause of action inquiry is a distinct question from the arising under inquiry. And to my knowledge, the Supreme Court has only recognized kind of implied causes of action, if you will. Because that's what you're doing. You're trying to imply the cause of action through federal common law in two instances. And neither applies here. One is an exception the court recognized in 1921 in a case called Smith and reinforced in 2005 in its Grable and Sons opinion regarding quiet title actions that turn on questions of federal law. And the only other exception that I know of is an action that can be brought under 1331 to seek injunctive relief against federal officers in the name of a provision in the federal constitution. Those are the only exceptions I know of in the law. So the observation that you start with that we're suing under the federal common law and that creates 1331 federal question jurisdiction is definitely right. That statement is correct. But it's not sufficient. Because you haven't identified the cause of action. So take, for example, you're not suing under ERISA. This is not a Title 29 cause of action. Well, yeah, it's it is after the multi-employer Pension Protection Amendment Act. The district courts as well as the appellate courts knew that they're the congressional policies that were in support of basically protecting the financial health of pension plans. That is when they started filling in the gaps with an alter ego claims successor claims as well as single employer claims. Right. So all of that is descriptively correct. But your your lawsuit here is not one under Title 29. And that's precisely for the reason that you just put your finger on. Because successor liability does not is not embodied in Title 29. It's embodied in the federal common law. Correct. OK, and so don't you can you can tell me I'm wrong. It wouldn't be the first time. OK, that I that my understanding that you need a cause of action. As well as the federal question, the kind of a rising under component that I'm mistaken about that. Yeah, I I would disagree. I would I think. If I'm understanding you correctly, there's an arising under issue that you're bringing up that has not been briefed. And if you've briefed it, you've briefed it, you're raising a claim under the federal common law. Your claim arises under federal law that that aspect of the inquiry you've satisfied, in my view. Now, the question is, what authority do you have to be in federal court to sue in federal court? What's your action? Where does it come from? And my point is that it doesn't come from 1331. 1331 only creates a right of action, to my knowledge, in those two limited instances that I referred to. Mr. Walters, to follow up on Judge Scudder's question, when we look at your complaint, we see a recitation of facts in the theory of liability, but we don't see a cause of action. Maybe that puts a fine point on it for you. Well, the cause of action, if you go back to some of the cases, basically, it's a well pleaded rule, though, that as long as you clearly state what the cause of action is, which I believe we did in the complaint by, you know, clearly saying this was a successful liability and proving or alleging both of the elements of a successful liability claim. Would you like to reserve the remainder of your time, Mr. Walters? Yes, Your Honor. Thank you. We'll now move to counsel for the appellee, Mr. Reces. You're on mute. You're on mute, Mr. Reces. My apologies again. We can hear you. If you can hear me now. Okay. Good morning, and may it please the court. Again, my name is Mike Reces, and I represent the appellee Prather Plumbing and Heating, or we'll use the acronym PPHI. Plaintiffs sought to impose liability for an ERISA default judgment against PPHI on the theory it was successor to PPI. The default judgment was based on Prather Plumbing's failure to make contributions to plaintiffs and other funds required by a collective bargaining agreement. As the court has noted, there's two issues in this case. First, whether the district court had subject matter jurisdiction to proceed. And second, whether the district court erred in granting summary judgment against plaintiffs on their successor liability theory. Now, based on the questions I've heard today, I think I'm going to start with jurisdiction. And we may not get to the second question. So let's talk about subject matter jurisdiction. And we can start with Thomas v. Peacock, which held that an ERISA judgment enforcement action cannot be brought on a veil-piercing theory without an independent basis for jurisdiction. So far, so good. Now, this court, the Seventh Circuit, has never really addressed this precise fact situation here. In this court's central states decision from 1996, the court was able to hold that the alter ego theory did provide a basis for jurisdiction based on the allegation that there was common control, which played a part in the ERISA violation, so that the suit was not just about enforcing the judgment. Mr. Reces, why is the subject matter jurisdiction analysis turning on points at that level of refinement and detail? Why is it not turning more upon some of the questions I was asking your colleague, Mr. Walters? Well, I don't disagree that, you know, we have to look at it and say, what's the cause of action? Okay. And what's the answer to that in your view? What claim was brought? I don't believe that there was any claim that was brought under ERISA in this lawsuit. All right. No claim whatsoever. It was just an allegation that we were the successor and answerable for the predecessor's violation of ERISA. There was no independent judgment. It was a successor liability claim. I'm sorry? It was a successor liability claim. Right. It was a successor liability claim. We don't have to guess at that. It's all over the complaint. That's right. I totally agree, Your Honor. And what's lacking here is an independent basis where that claim for successor liability could be joined, such as, for example, if you had diversity of citizenship. Right. Then you got it. Or let's suppose this was an elite erector's situation where there was no successive lawsuit. Suppose the alter ego was joined with the employer in the one and only lawsuit. There was nothing here that would have prevented counsel from naming us as well as the alleged predecessor in the original action. Then you don't have a problem, do you? That didn't happen here. Right. So if the initial lawsuit is plaintiff fund versus old co and new co with the cause of action against old co coming under Title 29, the federal common law successor liability claim can attach probably as a matter of ancillary jurisdiction, maybe as a matter of supplemental jurisdiction, but it can definitely ride along. It can ride along. Exactly. Exactly. And that point was made, for example, we cite a case, it's an out-of-circuit case, Ellis, but Ellis makes that point about how you can name them in the same lawsuit. And there was no allegation here to the contrary. And or you have a situation like another one, like McCluskey. In McCluskey, there was a claim that the alleged successor and alter ego was part of the violation and it was an ongoing violation. So if the claim was that there was an ongoing violation by the new company, there would also be, I think, an argument for jurisdiction that was pretty much assumed in 2018 in the McCluskey case. Mr. Reiss, how would you suggest that we factor in the elite erector case then to that analysis? I think, well, first of all, I think elite erectors reached the correct result. It reached the correct result because you only have one lawsuit. In fact, I'd say they probably should have stopped. The court should have stopped when it pointed out that there was only one lawsuit and not successive lawsuits, and it probably shouldn't have said anything. It was all dicta about what the court was saying about what was the nature of an alter ego liability and whether it was direct or vicarious. I don't think that there was really I think it was nothing more than dicta. And I think that would be my response to that. Thank you. You may continue. OK, so but we do suggest that here we don't have any independent basis for jurisdiction. And that would be true because there is no cause of action. And there is no I mean, there's no violation of ERISA. And there is an independent basis that could be asserted. And what we would also draw the court's attention to in Ellis is that if you were to simply take the view that under federal common law, successor liability or alter ego is it is always going to be a quote direct versus a vicarious claim. Then the distinctive feature of direct liability would be lost. And there would be no such thing as an ERISA judgment enforcement action. Everything would be an ERISA enforcement would be an ERISA judgment enforcement action other than, I guess, piercing the corporate veil. As we know from Thomas, that would be the one time it wouldn't be. Again, let's go to what was actually alleged in this case. Plaintiff's claim is not that PPHI is violating ERISA or that it controlled and dominated Prather Plumbing so that it somehow directly participated in the violation. This is a successive lawsuit under Thomas versus Peacock. The claim is that PPHI is liable for the judgment only as successor for the past violation. There is no claim of an ongoing violation. And our position is that without a claim of direct liability under a federal statute or an independent jurisdictional basis, such as diversity of citizenship, the court had no jurisdictional basis to enforce the judgment against PPHI. And as much as it pains me to say it, since we did get a judgment in our favor, if we are correct, the case should be dismissed or should be reversed, remanded and dismissed. And if plaintiff wants to refile in state court, that would be the forum. Since counsel never addressed, never really reached the issue of successor liability, I don't think that I need to address it either. That has been adequately briefed for like 40 pages in the briefs. But for all the reasons argued, we ask that either you affirm if there's jurisdiction or if there is not jurisdiction, that you remand for dismissal. Thank you for your time today and sorry again about some of the miscommunication. Thank you, Mr. Recess. Mr. Wolters, I'll move back to you for rebuttal. Thank you. In our reply brief, we I believe we addressed this question by the cases of Turner Ozan versus Hyman Powers, citing Illinois versus the city of Milwaukee, which is a Supreme Court case. And basically saying that it is standard learning that federal question jurisdiction arises only when the complaint standing alone establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. We believe that the substantial question of federal law is successor liability and the existence of federal question jurisdiction, therefore, must under long standing precedent of the Supreme Court, be determined from the face of the complaint. We believe that we clearly show the well pleaded complaint rule was satisfied here. So I hope that answers your question about arising under federal law. The other issue that I'd like to address is the fact that this court basically got the analysis completely wrong on successor liability. It looked at one factor of the price paid for physical assets compared to the judgment amount against PPI. And basically it said because of the difference here, it would be grossly inequitable to place judgment against or against the PPI. Mr. Walters, what's what's what's what's wrong with that? Doesn't it doesn't it doesn't it seem that the son was involved in his father's business, which was failing? And so he started a new business and they had the same last name. He expanded the business. The business at least appears today to look totally different than it did when PPI was failing. What's wrong with the district court's analysis in not straddling the son's new business with a three hundred thousand dollar debt of his father? Because that's not how the analysis done in the Seventh Circuit to determine whether it's equitable is by determining. And this is in the first man web case is by determining whether the successor had notice and an opportunity to deal with the liability either through indemnification or by a lower purchase price. So in this case, the district court actually agreed that we purchased what what Mr. Walter, what purchase price did he pay other than buying some tools? And I know he bought a thousand dollar truck and a couple of other things. The purchase price is only twenty five thousand dollars. However, there are other ways of protecting PPI. H.I. could have protected itself. This is all speculation, but could have protected itself by indemnification with PPI. PPI is still an existing active corporation. So as as Manuel one says, you know, if if they have an opportunity to protect themselves, then there is, you know, the standpoint of there's been notice and equity. Then goes that issue goes away as far as, you know, being against the PPI. It's obvious that David Prater had notice of the liabilities through several letters sent to him. Thank you, Mr. Walters. Thank you for your argument. Thank you, Mr. Recess. We appreciate the argument of both counsel case will be taken under advice.